IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 2:13cr098 (RCY) |
| | ) | |
| IRFAN M. JAMEEL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), filed by counsel on April 30, 2020 (ECF No. 264) ("Motion"). The United States has responded (ECF No. 272), the Defendant has replied (ECF No. 274), and the Defendant has filed two supplemental memoranda (ECF Nos. 275, 278). The Court has reviewed these pleadings and all exhibits, and the matter is ripe for disposition.[1] The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

I. Background

Irfan M. Jameel ("the Defendant" or "Jameel") was convicted by a jury on June 12, 2014 of the four fraud-related counts in the indictment. (ECF Nos. 15, 137.) After the verdict was returned, the Court heard argument on detention, Jameel's bond was revoked, and he was

---

[1] On April 30, 2021, the United States filed a supplemental memorandum (ECF No. 279) and sealed exhibit (ECF No. 280). Because the Court's analysis herein was not affected by the information and arguments contained in the supplemental memorandum and sealed exhibit, the Court gave no consideration to the supplemental memorandum and sealed exhibit and, accordingly, did not require a response from the Defendant.

remanded into custody. (ECF No. 136.) Jameel's motion for a new trial, filed on June 26, 2014, (ECF No. 142), was denied by Opinion and Order filed on September 8, 2014. (ECF No. 154.) At the sentencing hearing on December 2, 2014, Jameel's motion for a downward variance was denied, but the Court sustained in part and overruled in part Jameel's objections to the Presentence Investigation Report ("PSR"), resulting in a reduction in the advisory sentencing guideline range from an initial range of 135 to 168 months to a revised range of 87 to 108 months. (ECF Nos. 179, 185.) As reflected in the Judgment in a Criminal Case (ECF No. 180), Senior United States District Judge Henry C. Morgan, Jr. sentenced Jameel to a total term of imprisonment of 108 months and ordered Jameel to pay restitution in the amount of $1,361,817.10. (ECF Nos. 176-77, 180.) Thereafter, Jameel's various appeals and petitions were denied or dismissed. (*See* ECF Nos. 213-220, 244-47, 252-55, 266-67.)

Jameel sought compassionate release from the Warden at Federal Medical Center Devens in November 2019, and that request was denied on December 6, 2019. (ECF No. 265 at 1, 4.) His request for reconsideration was also denied. (*Id*. at 5.) Jameel later renewed his request for compassionate release on March 30, 2020, due to the COVID-19 pandemic and, at the time Jameel's present motion was filed, on April 30, 2020, there was no decision from the Warden. (*Id.* at 2.) The parties agree that Jameel satisfied the exhaustion requirement. (ECF No. 272 at 11; ECF No. 274 at 3.) Jameel's case was reassigned to the undersigned on November 3, 2020.

According to the response filed by the United States, Jameel was approved in 2020 by the Warden to be transferred to home confinement pursuant to 18 U.S.C. § 3624(c)(2) and the BOP's expanded authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), which permits the BOP to

transfer inmates to home confinement beyond the time frames set forth in § 3624(c)(2),[2] but, for reasons not clear in the record before the Court, the transfer did not occur.  (ECF No. 272 at 3-4.)  In the meantime, according to Jameel, he tested positive for COVID-19 mid-December 2020 and was moved into the hospital at FMC Devens.  (ECF No. 275.)  According to the medical records from BOP, as of December 24, 2020, Jameel was being housed in a quarantine unit at FMC Devens where his Covid-19 symptoms were being monitored and he was receiving needed medical care.  As of February 11, 2021, the Defendant supplemented his Motion, noting some post-COVID medical issues and "an additional serious illness . . . schizophrenia."  (ECF No. 278 at 2-3.)  Jameel also suffers from end-stage renal disease on hemodialysis, diabetes Type 2, congestive heart failure, papillary thyroid cancer, diabetic retinopathy, glaucoma, and asthma. (ECF No. 273 at 2.)

II.  Legal Standard:  Compassionate Release Under the First Step Act of 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).  Once the administrative remedies under § 3582(c)(1)(A) have been exhausted

---

[2] Under § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or six months."  The CARES Act permits the BOP to expand these time frames.  The Court has no authority under § 3624(c)(2) to direct the BOP to place an incarcerated defendant in home confinement because such decisions are committed solely to the BOP's discretion. *United States v. Calderon*, 801 F. App'x 730, 731-32 (11th Cir. 2020) (explaining that federal courts lack jurisdiction to grant early release to home confinement).  Once a court imposes a sentence, "[t]he [BOP] shall designate the place of the prisoner's imprisonment[.]" 18 U.S.C. § 3621(b)*; see Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program . . . [b]ut decisionmaking authority rests with the BOP.") (emphasis in original).

or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.* Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id*.

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019). While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19[3], a defendant generally must show "both a particularized susceptibility to

---

[3] Jameel has not focused on COVID-19 to support his arguments for compassionate release but, instead, has focused on his end-stage renal disease and the combination of his other medical conditions, as discussed herein.

the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, ___ F. Supp. 3d ___, 2020 WL 1906845, at *1 n.2 (E.D. Va. April 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially

diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[4] U.S.S.G. § 1B1.13(2). As noted previously, pursuant to *United States v. McCoy*, the policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

III. Analysis

The parties agree that Jameel has exhausted his administrative remedies as required. He has served more than 75% of the 108-month sentence and is projected to complete his sentence and be released on April 3, 2022. The parties also agree that Jameel, age 58, suffers from multiple ailments, including end-stage renal disease on hemodialysis, diabetes Type 2, congestive heart failure, hypertension, papillary thyroid cancer, diabetic retinopathy, glaucoma, and asthma. (ECF No. 273 at 2.) Jameel receives hemodialysis three times per week to address the renal disease. (*Id*. at 3.) The medical records also indicate that Jameel is suffering from schizophrenia and COPD. (ECF No. 277 at 8, 13, 16, 18, 44.)

---

[4] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

Jameel contends that his end-stage renal disease is a terminal illness, and he points out that the Sentencing Commission lists "end-stage organ disease" as a *per se* example of a terminal illness in § 1B1.13, application note 1(A)(i). (ECF No. 274 at 3.) Jameel's position is that his "diagnosis . . . implies an 'end-of-life trajectory.' That is, kidney failure can be mitigated by dialysis for a time, but it cannot be cured. Slowly or rapidly, unless the patient qualifies for an receives a transplant, the condition will keep getting worse until the patient dies." (*Id*. n.2.) Jameel also points out that the definition of "terminal illness" is "a disease or condition with an end-of-life trajectory," and that "no chronological 'life expectancy' element is required for a condition to be recognized as 'terminal.'" (*Id*. at 4 (citing § 3582(d)(1))). Further, Jameel argues that the combination of his other serious health conditions – insulin-dependent Type 2 diabetes, congestive heart failure, asthma, hypertension, glaucoma, diabetic retinopathy, and papillary thyroid cancer – also constitutes an "extraordinary and compelling reason" to be considered for sentence reduction. (*Id*. at 5.) Accordingly, Jameel contends, he has serious medical conditions that substantially diminish his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover, as set forth in application note 1(A)(ii)(I). (*Id*. (quotations omitted)). Jameel also argues that his mental health issues "affect[] his failure or inability to 'accept responsibility' for the conduct leading to his conviction and sentence" and are also "directly related to his moderate disciplinary history." (*Id*. at 8.)

With regard to the factors under 18 U.S.C. § 3553(a), the Defendant's arguments can be summarized as follows: (1) the "characteristics of the defendant" . . . "now include an incurable and (eventually) fatal medical condition;" (2) "service of some six years' imprisonment adequately reflects the seriousness of this significant but non-violent offense, and satisfies the need to provide just punishment and to afford adequate deterrence, . . . particularly because service of a sentence

8

while suffering from serious medical conditions, and the psychological impact of having no control over one's own course of treatment, inflicts more punishment in a shorter period of time;" (3) Jameel's age and medical conditions reduce the probability of recidivism; (4) his medical care can be more effectively provided at home rather than in the BOP; (5) Jameel's sentence was "above average for bank fraud cases" so "a reduction would not be inconsistent with the need to avoid unwarranted sentencing disparities;" (6) his ability to pay restitution would be "enhanced by releasing him, so that he can work;" and (7) a reduced sentence would be sufficient but not "greater than necessary" to achieve the objectives set forth in section 3553(a). (ECF No. 265 at 15-18.)

The United States contends that Jameel has not shown an extraordinary and compelling reason for reducing his sentence. It argues that his end-stage renal disease "is not serious and advanced." (ECF No. 272 at 12.) It also argues that the combination of his medical conditions does not constitute an extraordinary and compelling reason. (*Id*. at 19.) It points out that Jameel has "routinely disregarded the medical advice and guidance he received from BOP." (*Id*. at 15.) It notes that there have been multiple times when Jameel refused to take his prescription medication compliantly, that he refused surgery, that he refused to attend eye doctor appointments, and that he told medical staff that he wanted to withdraw from dialysis. (*Id*. at 15-16.) The United States also notes that Jameel's medical conditions seem to be generally stable and that there are "no diagnoses that would predict a life expectancy of less than 18 months." (*Id.* at 16-18.)

The United States contends that Jameel is "essentially seeking 'release;' not compassionate release in accordance with the applicable statutory provisions." (*Id*. at 17.) It notes that on several occasions, when refusing medical treatment, he has told medical staff that "he feels he has been unjustly incarcerated," and that he is "in prison illegally and needs to be released." (*Id*.)

9

The United States also argues that even if extraordinary and compelling reasons exist, the section 3553(a) factors do not support a reduction. It argues that the nature of the offense – "swindl[ing] financial institutions of nearly $4 million through a fraudulent scheme" – and Jameel's characteristics – refusing to accept responsibility and receiving "two specific violations related to the unauthorized payment or receipt of money, which mirrors the fraudulent receipt of money that led to his conviction" – counsel in favor of denying Jameel's motion for compassionate release. (*Id.* at 23.) It notes that Jameel has had at least six disciplinary proceedings, including "threatening bodily harm," cocaine use, refusing a work assignment, violating the facility's rules regarding cleanliness, and two separate violations for "giving/accepting money [without] authorization." (*Id.* at 4.) The United States also contends that both specific and general deterrence would be served by denying the motion, in particular when the defendant shows no remorse or acceptance of responsibility and has "obstinate[ly] refus[ed] to cooperate with BOP medical staff." (*Id.* at 24.) Third, it argues that Jameel's sentence was "appropriate and reasonable given the nature of his crime and his obstruction of justice," and that denying the motion will "properly reflect the seriousness of his offense, promote respect for the law, and provide just punishment." (*Id.*) The fourth argument of the United States – that the BOP is processing Jameel's release to home confinement – is no longer viable, given the passage of time and the failure of the BOP to release Jameel to home confinement. (*Id.* at 25.) Finally, the United States contends that the BOP records reflect "the quality care" that Jameel has received in prison and that there is no support for his argument that he will receive better care if released. (*Id.*)

With regard to whether Jameel has established the existence of "extraordinary and compelling" reasons for compassionate release, the Court agrees that Jameel has many serious medical conditions. Moreover, the Court does not require a chronological life-expectancy element

in order for a condition to described as terminal, as discussed by the parties. But there is no indication that these serious medical conditions are not being properly addressed and treated within the BOP. Jameel receives needed medical care and medications, including hemodialysis three times per week. His thyroid cancer was treated with a thyroidectomy. There is also a history of his refusing some recommended medical treatments and medications, although Jameel's counsel points out that some of this behavior may reflect his mental conditions. (*See* ECF Nos. 272 at 15-17; 273 at 11, 15, 17, 18, 20, 22, 23, 25; 274 at 8-9.) Regarding Jameel's contention that the diagnosis of schizophrenia is "an additional serious illness," (ECF No 278 at 2), it appears that this diagnosis was made in 2017. (*See* ECF No. 277 at 44.) While Jameel has some serious medical conditions that require continued treatment, these conditions are being properly treated and are not so severe as to provide an extraordinary and compelling reason for a reduction in his sentence.

Even if the Court agreed that Jameel had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Jameel's sentence would, in fact, undermine the relevant § 3553(a) factors. In particular, a reduction in Jameel's sentence would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offenses, and Jameel's history and characteristics. Of particular concern is Jameel's complete lack of remorse and failure to accept responsibility. In addition, Jameel has had at least six disciplinary proceedings during his term of imprisonment, including "threatening bodily harm," cocaine use, refusing a work assignment, and two separate violations for "giving/accepting money [without] authorization." Further, Jameel's sentence of 108 months was and is reasonable and appropriate,

and it was and is no greater than necessary to achieve the objectives of § 3553(a). Accordingly, Defendant's Motion for Reduction in Sentence (ECF No. 264) will be denied.

     An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: <u>May 5, 2021</u>